UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** 44 Montgomery Street, 26th Floor San Francisco, CA 94104 <br>                    Plaintiff, <br><br> v. <br><br> **SCOTT GERSHON, PAUL CIFALDI, NEIL SILVER, and ROBERT DAVIS,** <br>                    Defendants. | **COMPLAINT** <br><br> Civil Action No. 1:05 |

Plaintiff Securities and Exchange Commission ("SEC" or "Commission") as and for its Complaint alleges that:

## NATURE OF THE ACTION

1.   The SEC brings this action to prevent future violations of the anti-fraud, unregistered securities sales, reporting, books and records and internal controls provisions of the federal securities laws by Defendants Scott Gershon, Paul Cifaldi, Neil Silver and Robert Davis.

2.   This matter involves the sale of unregistered securities by unlicensed broker-dealers, as well as fraudulent accounting and reporting practices, by the officers, directors and agents of Intercallnet, Inc. ("Intercallnet"), a multi-media voice and on-line communications company headquartered in Ft. Lauderdale, Florida.

3. From at least March 2000 through December 2000, the Defendants participated in a scheme involving the sale of unregistered Intercallnet securities by Defendants Neil Silver and Robert Davis, who also made material misrepresentations and omissions to potential investors. Silver and Davis were compensated in part by indirect commission payments to sham companies under their control. These commissions, paid by checks written by Defendant Scott Gershon, were disguised as payments for property, equipment and intangible assets. After the payments had been made and in preparation for an independent audit of Intercallnet, invoices were created and back-dated for the earlier payments to the sham companies controlled by Silver and Davis. Defendant Paul Cifaldi then "approved" these invoices for payment. The fraudulent invoices became part of the books and records of Intercallnet, and led to the false characterization of the stock promotion commissions to Silver and Davis as payment for assets on the financial statements of Intercallnet and in periodic reports that were filed with the Commission from April 2001 through November 2002.

4. By engaging in such conduct Defendants violated Section 5 of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77e], Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Section 10b of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder, and violated or aided and abetted violations of Section 15 (a) of the Exchange Act [15 U.S.C. § 78o]. Defendants Gershon and Cifaldi violated Section 13(b)(5) of the Exchange Act [15 U.S.C § 78m(b)(5)] and Rules 13b2-1 and 13b2-2 [17 C.F.R. §§ 240.13b2-1 and 240.13b2-2] thereunder and aided and abetted violations of Sections 13(a), 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C §§

78m(a), 78m(b)(2)(A) and 78m(b)(2)(B)] and Rules 12b-20, 13a-1 and 13a-13 [17 C.F.R. §§ 240.12b-20, 240.13a-1 and 240.13a-13] thereunder.

5. The SEC brings this action seeking (a) injunctions against future violations; (b) disgorgement of ill-gotten gains; (c) civil money penalties and (d) officer and director bars against Defendants Gershon and Cifaldi.

## JURISDICTION

6. The Commission brings this action pursuant to the authority conferred upon it by Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)] and Section 21(d) of the Securities Exchange Act [15 U.S.C. § 78u(d)].

7. This Court has jurisdiction over this action, and venue is proper, pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Sections 21(e) and 27 of the Exchange Act, [15 U.S.C. §§ 78u(e) and 78aa]. Defendants, directly or indirectly, made use of the means and instrumentalities of interstate commerce or of the mails, or the facilities of a national securities exchange in connection with the acts, transactions, practices and courses of business alleged herein.

## DEFENDANTS

8. SCOTT R. GERSHON ("Gershon"), age 48, is a resident of Hollywood, Florida. Gershon was the founder, and, at all relevant times, chief executive officer, chief financial and accounting officer of Intercallnet, and the chairman of its Board of Directors.

9. PAUL A. CIFALDI ("Cifaldi"), age 62, is a resident of Hilton Head, South Carolina. At all relevant times, Cifaldi was the chief operating officer of Intercallnet, and a member of its Board of Directors.

10. NEIL SILVER ("Silver"), age 39, is a resident of Aventura, Florida. Although not licensed or registered as a broker-dealer, Silver was hired by Intercallnet to promote the private placement of unregistered Intercallnet stock, for which he received commissions, including indirect payments to several companies owned or controlled by Silver.

11. ROBERT DAVIS ("Davis"), age 59, is a resident of Aventura, Florida. Although not licensed or registered as a broker-dealer, Davis was hired by Intercallnet to promote the private placement of unregistered Intercallnet stock, for which he received commissions, including payments to several companies owned or controlled by Davis.

## OTHER RELATED ENTITIES AND INDIVIDUALS

12. Intercallnet, Inc. ("Intercallnet" or "the Company") is an interactive multi-media contact center that provided traditional voice communications and on-line technology services to business clients to assist in managing contacts with "on-line" customers. Intercallnet began as a company incorporated in Florida on July 30, 1999, under the name Inter-Call-Net Teleservices, Inc. On January 26, 2001, Inter-Call-Net Teleservices, Inc. merged with and acquired Never Miss A Call, Inc., an inactive Nevada public shell corporation that was registered with the Commission. The merged entity was named Intercallnet Teleservices, Inc. In April 2001, Intercallnet Teleservices, Inc. changed its name to Intercallnet, Inc., and re-incorporated in Florida. The common stock of Intercallnet was registered with the Commission pursuant to Section 12(g) of the Exchange Act [15 U.S.C. §78$l$(g)] on April 19, 2001.

13. Ahearn Jasco is an accounting firm that was hired to audit the books and records of Intercallnet in July 2000. Ahearn Jasco was hired in anticipation of the reverse merger of

Intercallnet Teleservices, by which the new entity became a public company, and thus subject to the reporting and other requirements of the federal securities laws.

## THE CONDUCT

### Sale of Unregistered Securities by Unlicensed Broker-Dealers

14. In 1999, Defendant Gershon started a "call center" business[1] as a commercial internet services company, incorporated under the name Inter-Call-Net Teleservices, Inc. ("Intercallnet Teleservices"). Defendant Gershon hired Defendant Cifaldi who had experience in the call center business.

15. Defendant Gershon planned to telemarket investment in his internet services company through the call center operations. Defendants Gershon and Cifaldi hired Defendants Silver and Davis to promote investment in Intercallnet Teleservices stock through private placements.

16. Defendant Silver had been a stockbroker but was not licensed when Defendants Gershon and Cifaldi hired him. Defendant Davis had commercial sales experience but had never held a license to sell securities.

17. From late 1999 through 2000, Intercallnet Teleservices published three different "private placement" offering memoranda to potential investors. The offering memoranda were dated August 1999, March 2000, and June 2000. Each offering memorandum falsely stated that only officers and directors or broker-dealers registered with the National Association of Securities Dealers, Inc. were promoting Intercallnet Teleservices shares. Instead, Defendants Silver and Davis, and others supervised by Defendants Silver and Davis, made general telephone

---

[1] A "call center" handles and manages another company's internet and telephone communications with its customers.

solicitations ("cold calls") to potential investors through the call center to induce them to purchase Intercallnet Teleservices stock. Defendants Silver and Davis, or individuals supervised by them, then mailed or caused to be mailed offering memoranda to those potential investors, and obtained subscription agreements from certain of them.

18. During the solicitations, Defendants Silver and Davis misrepresented themselves as investment bankers. Defendants Silver and Davis also failed to disclose to potential investors that neither was licensed to sell securities or that both were paid by Intercallnet Teleservices to promote the stock.

19. Defendants Silver and Davis knew from the disclosure in the offering memoranda that the Intercallnet Teleservices stock they promoted was not registered with the Commission, and knew or should have known that the unregistered stock they promoted was not protected by any safe harbor or registration exemption.

20. For their services in arranging private placements of Intercallnet Teleservices stock, Defendants Silver and Davis were paid over $1,160,000 in commissions from May through October 2000. The payments were paid directly to Defendants Silver or Davis, or to fictitious companies owned and controlled by Defendants Silver or Davis.

21. Defendants Gershon and Cifaldi knew or were reckless in not knowing that neither Defendants Silver nor Davis was licensed to sell securities at the time each was hired, nor at any time during the period each promoted Intercallnet Teleservices stock, and that Defendants Silver and Davis were soliciting investment in unregistered Intercallnet Teleservices stock.

## Accounting Fraud

22.  The commissions paid to Defendants Silver and Davis for stock promotions were disguised on Intercallnet's books and records as purchases of property, equipment, and intangible assets. Defendants Silver and Davis created sham corporate entities through which each received commission payments from Intercallnet. None of the sham companies had actual employees or business operations or provided any tangible goods or services to Intercallnet. Using the sham companies and fraudulent invoices, Defendants Gershon and Cifaldi caused Intercallnet to capitalize fictitious assets valued at approximately $970,000 in fiscal years 2000 and 2001. The fictitious assets and fraudulent accounting were reflected in misleading financial statements included in periodic reports filed with the Commission from April 2001 through November 2002.

23.  Defendant Gershon wrote and endorsed the commission checks to pay Defendants Silver and Davis. Defendant Gershon knew the monies paid to Defendants Silver and Davis and their sham companies were commissions for stock promotion. Defendant Gershon disguised the commissions by describing them as payments for fictitious products or services, including website design and implementation, software, and consulting on the memorandum line of the commission checks he routinely wrote. Defendant Gershon neither received nor required billing statements or invoices from the alleged payees.

24.  In late 2000, anticipating a reverse merger with a shell company whose securities were registered with the SEC, Defendant Gershon hired an accounting firm, Ahearn Jasco, to audit Intercallnet's books and records and financial statements.

25. During the audit, Defendants Gershon and Cifaldi asked Defendants Silver and Davis to sign backdated false services agreements to make it appear the sham companies provided value for the checks written to them for Defendants Silver's and Davis' stock promotion commissions. Defendants Silver and Davis signed the backdated services agreements.

26. False backdated invoices from the sham Silver and Davis companies were also created, which purported to bill Intercallnet for services and products that were not provided, to falsely document the commission payments for Intercallnet's auditors. Gershon and Cifaldi made these invoices part of the business records of Intercallnet that were provided to Ahearn Jasco auditors.

27. In early 2001, fourteen false invoices were created and backdated to the year 2000, to make it appear that Tezoro, one of Defendant Silver's sham companies, had billed Intercallnet $288,012 for website design services. The invoices matched checks Defendant Gershon wrote to Defendant Silver for stock promotion. On the memo line of each check, Defendant Gershon had falsely written "website design." Defendants Gershon and Cifaldi each knew that neither Defendant Silver nor Tezoro had performed any website design services, and that a different company, unrelated to Defendant Silver, had designed Intercallnet's website.

28. During 2000, Intercallnet also paid Defendant Silver $20,641 through Tezoro, allegedly for "computer equipment." Defendant Gershon knew that neither Defendant Silver nor Tezoro had provided any such equipment to Intercallnet. A false backdated invoice for computer equipment was later created to support that check.

29. Another false invoice made it appear that on August 20, 2000, Silver billed Intercallnet $251,912.78 through another sham entity called VerlisTech for sale of a "disaster recovery package" which purportedly included industrial equipment known as an uninterrupted power supply ("UPS"). The invoice was created to match a check for that amount to Silver (through VerlisTech) for stock promotion. Defendants Gershon and Cifaldi knew that Intercallnet had purchased the UPS for $5000 from the previous tenant of office space Intercallnet now occupied.

30. Another false invoice made it appear that on September 15, 2000 Defendant Silver billed Intercallnet $45,000 through yet another sham entity, Austin Technologies, for call center technology named "ASPm Express Calls." Austin Technology was formed two days prior to Defendant Gershon writing the check. The invoice was later created and backdated to match and support the check. Defendants Gershon and Cifaldi knew that, months earlier, Intercallnet had purchased the technology from another company for $25,000.

31. Another false invoice made it appear that Defendant Davis billed Intercallnet $53,200 through a sham entity known as MediaTech for development of investor packages. The invoice was created, then marked as paid, to hide stock commissions paid to Defendant Davis. As Defendants Gershon and Cifaldi knew, neither Defendant Davis nor MediaTech developed investor packages for Intercallnet.

32. Another false invoice made it appear that defendant Davis billed Intercallnet $188,814 through yet another sham company, Trebori, for website design services. The invoice was created to match a check for that amount paid to Defendant Davis for stock promotion. Defendants Gershon and Cifaldi knew that neither Defendant Davis nor Trebori had performed

any such services, and that a different company, unrelated to Defendant Davis, had designed the website.

33. To make each of the backdated invoices appear authentic, Defendant Gershon ordered the invoices stamped with post-dated "received" and "paid" stamps that matched the false dates on the invoices. Defendants Gershon also directed Cifaldi to initial the backdated year 2000 invoices, indicating approval for payment, which Defendant Cifaldi did in March 2001. In so doing, Defendants Gershon and Cifaldi intended to create the impression that: (1) Intercallnet received the invoices before Defendant Gershon wrote the checks to Defendants Silver and Davis for stock promotion; (2) Defendant Cifaldi approved the payment of each invoice for the products and services described in the invoice; and (3) Defendant Cifaldi approved payment on or near the date appearing on the invoice. Defendants Gershon and Cifaldi then provided the false backdated invoices to the Company's auditors as part of Intercallnet's business records.

34. Defendants Gershon and Cifaldi caused Intercallnet to improperly capitalize the phantom products and services described in the invoices on the financial statements of the company. Approximately $970,000 of the $1,160,000 in commissions paid to Defendants Silver and Davis were fraudulently capitalized by this device. The fraudulent financial statements were incorporated into the company's annual and quarterly filings covering periods from July 30, 1999 through June 30, 2001.[2] Consequently, the financial statements Intercallnet filed with the Commission for fiscal 1999 and 2000 were materially false and misleading.

---

[2] Intercallnet's Form 10-KSB, filed on September 28, 2001, included audited financial statements covering all periods from the Company's inception in July 1999 through June 30, 2001.

35. Defendants Gershon and Cifaldi knew or were reckless in not knowing that: (1) the checks Defendant Gershon wrote to the sham companies controlled by Defendants Silver and Davis contained materially false information; (2) the matching invoices created and marked as approved for payment for the Silver companies, Tezoro, VerlisTech, and Austin Technologies, and the Davis companies, Media Tech and Trebori, were false and contained materially false information; (3) Intercallnet used the fraudulent invoices and checks to improperly capitalize the stock promotion commissions paid to Defendants Silver and Davis; (4) Intercallnet used the fraudulent invoices and checks to deceive the company's outside auditors, thereby distorting the Company's reported quarterly and annual financial results for fiscal 1999 and 2000; and (5) the distorted financial results would be and were included in Intercallnet filings with the Commission.

36. Defendants Silver and Davis knew, or were reckless in not knowing, that the false and backdated invoices and the false information contained in the checks made out to their sham companies, would and did become part of the books and records of Intercallnet, and therefore would and did cause the financial statements and Intercallnet filings with the Commission to be materially false and misleading.

37. By engaging in the conduct described above, Intercallnet, and Defendants Gershon and Cifaldi, each as officers and directors of Intercallnet, failed to make and keep books, records and accounts which accurately and fairly reflected the Company's transactions and dispositions of its assets, and failed to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that its corporate transactions were executed

in accordance with management's authorization and in a manner to permit the preparation of financial statements in conformity with generally accepted accounting principles.

## FIRST CLAIM

### Violations of Section 5 of the Securities Act

38. The Commission re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 37, above.

39. As set forth more fully above, Defendants Gershon, Cifaldi, Davis and Silver, directly or indirectly, used the telephone and mail to solicit and sell Intercallnet Teleservices stock, and to offer to sell Intercallnet Teleservices stock, through the use or medium of a prospectus or otherwise, when no registration statement was in effect or had been filed, and the stock was not protected by any safe harbor or exemption.

40. By reason of the foregoing, Defendants Gershon, Cifaldi, Silver and Davis each violated Section 5 of the Securities Act.

## SECOND CLAIM

### Violations of Section 17(a) of the Securities Act

41. The Commission re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 37, above.

42. By falsely misrepresenting themselves as investment bankers and failing to disclose that they were not licensed to sell securities and that they were being compensated for the promotion of unregistered Intercallnet Teleservices stock, Defendants Silver and Davis, directly or indirectly, in the offer or sale of securities and by the use of the means or instruments of transportation or communication in interstate commerce or by use of the mails employed

devices, schemes or artifices to defraud; obtained money or property by means of untrue statements of material fact and omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or engaged in transactions, practices or courses of business which operated or would operate as a fraud or deceit upon purchasers.

43. Defendants Gershon and Cifaldi reviewed the offering memoranda and prepared scripts used by Defendants Silver and Davis and consequently each knew, or was reckless in not knowing, that Defendants Silver and Davis were making the above described misrepresentations and omissions in the unlicensed promotion of Intercallnet Teleservices stock.

44. By issuing checks to Silver and Davis containing false or misleading descriptions of the services rendered, and by incorporating back-dated invoices from sham companies into the books and records of Intercallnet in order to disguise the compensation paid to Defendants Silver and Davis for their promotion of Intercallnet Teleservices stock as the purchase of property, equipment and web services, and knowing that this false documentation would be and was incorporated into required filings with the Commission, Defendants Gershon and Cifaldi, directly or indirectly, in the offer or sale of securities and by the use of the means or instruments of transportation or communication in interstate commerce or by use of the mails employed devices, schemes or artifices to defraud; obtained money or property by means of untrue statements of material fact and omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or engaged in transactions, practices or courses of business which operated or would operate as a fraud or deceit upon purchasers.

45. Defendants Silver and Davis each knew, or was reckless in not knowing, that Defendants Gershon and Cifaldi would include checks containing false and misleading legends and back-dated invoices from the Silver and Davis companies in the books and records of Intercallnet in order to disguise payments to them for their unlawful promotion of Intercallnet Teleservices stock.

46. By reason of the foregoing, Defendants Gershon, Cifaldi, Silver and Davis each violated Section 17(a) of the Securities Act.

## THIRD CLAIM

### Violations of 10(b) of the Exchange Act and Rule 10b-5

47. The Commission re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 37, above.

48. By falsely misrepresenting themselves as investment bankers and failing to disclose that they were not licensed to sell securities and that they were being compensated for the promotion of unregistered Intercallnet Teleservices stock, defendants Silver and Davis, directly or indirectly, by use of the means or instruments of transportation or communication in interstate commerce, or by the use of the mails or of the facilities of a national securities exchange, in connection with the purchase or sale of securities, employed devices, schemes, or artifices to defraud to obtain money or property, each made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and have engaged in acts, practices, or courses of business which operate or would operate as a fraud or deceit upon any person.

49. Defendants Gershon and Cifaldi reviewed the offering memoranda and prepared scripts used by Defendants Silver and Davis and consequently each knew, or was reckless in not knowing, that Defendants Silver and Davis were making the above described misrepresentations and omissions in the unlicensed promotion of Intercallnet Teleservices stock.

50. By issuing checks to Silver and Davis containing false or misleading descriptions of the services rendered, and by incorporating back-dated invoices from sham companies into the books and records of Intercallnet in order to disguise the compensation paid to Defendants Silver and Davis for their promotion of Intercallnet Teleservices stock as the purchase of property, equipment and web services, and knowing that this false documentation would be and was incorporated into required filings with the Commission, Defendants Gershon and Cifaldi, directly or indirectly, by use of the means or instruments of transportation or communication in interstate commerce, or by the use of the mails or of the facilities of a national securities exchange, in connection with the purchase or sale of securities or securities-based swap agreements, employed devices, schemes, or artifices to defraud to obtain money or property, each made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and have engaged in acts, practices, or courses of business which operate or would operate as a fraud or deceit upon any person.

51. Defendants Silver and Davis each knew, or was reckless in not knowing, that Defendants Gershon and Cifaldi would include checks containing false and misleading legends and back-dated invoices in the books and records of Intercallnet in order to disguise payments to them for their unlawful promotion of Intercallnet Teleservices stock.

52. By reason of the foregoing, Defendants Gershon, Cifaldi, Silver and Davis each violated Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

### FOURTH CLAIM

#### Aiding and Abetting Violations of Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1 and 13a-13

53. The Commission re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 37, above.

54. Defendants Gershon and Cifaldi, by engaging in the conduct described above, each caused Intercallnet to file materially false and misleading annual reports on Forms 10-KSB and materially false and misleading quarterly and other reports on Form 10-QSB with the Commission for the periods from July 30, 1999 through June 30, 2001.

55. By reason of the foregoing, Defendants Gershon and Cifaldi, each aided and abetted violations of Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1 and 13a-13 thereunder.

### FIFTH CLAIM

#### Aiding and Abetting Violations of Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act

56. The Commission re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 37, above.

57. Defendants Gershon and Cifaldi, by engaging in the conduct described above, each caused Intercallnet's failure to make and keep books, records and accounts which accurately and fairly reflected its transactions and dispositions of its assets, and its failure to devise and maintain a system of internal accounting controls sufficient to provide reasonable

assurances that its corporate transactions were executed in accordance with management's authorization and in a manner to permit the preparation of financial statements in conformity with generally accepted accounting principles.

58. By reason of the foregoing, Defendants Gershon and Cifaldi each aided and abetted violations of Section 13(b)(2)(A) and (B) of the Exchange Act.

### SIXTH CLAIM

### Violations of Section 13(b)(5) of the Exchange Act and Rules 13b2-1 and 13b2-2

59. The Commission re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 37, above.

60. Defendants Gershon and Cifaldi, by engaging in the conduct described above, each knowingly circumvented or knowingly failed to implement a system of internal accounting controls, or knowingly falsified Intercallnet's books, records, or accounts.

61. Defendants Gershon and Cifaldi, by engaging in the conduct described above, each directly or indirectly falsified or caused to be falsified books, records or accounts subject to Section 13(b)(2)(A) of the Exchange Act.

62. Defendants Gershon and Cifaldi, by engaging in the conduct described above, each made or caused to be made materially misleading statements to Intercallnet's outside auditors and/or omitted to state material facts necessary to make statements made to those auditors not misleading.

63. By reason of the foregoing, Defendants Gershon and Cifaldi each violated Section 13(b)(5) of the Exchange Act and Rules 13b2-1 and 13b2-2 thereunder.

## SEVENTH CLAIM

## Violations of Section 15(a) of the Exchange Act

64. The Commission re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 37, above.

65. Defendants Silver and Davis, by engaging in the conduct described above, each used the telephone and the mail to contact and recruit potential investors throughout the United States for Intercallnet and to promote, induce, or attempt to induce the purchase of Intercallnet stock by investors throughout the United States, at such times when neither was licensed to sell securities nor associated with a registered broker-dealer.

66. Defendants Gershon and Cifaldi each knew or was reckless in not knowing that neither Defendants Silver nor Davis was licensed to sell securities, and that Defendants Silver and Davis were using the mails and other instrumentalities of interstate commerce to effect transactions in, or to induce or attempt to induce the purchase or sale of Intercallnet Teleservices stock.

67. By reason of the foregoing, Defendants Silver and Davis each violated Section 15(a) of the Exchange Act, and Defendants Gershon and Cifaldi each aided and abetted violations of Section 15(a) of the Exchange Act.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff SEC respectfully requests that this Court enter a Final Judgment:

1. permanently enjoining Defendants Gershon, Cifaldi, Silver and Davis each from future violations of Sections 5 and 17(a) of the Securities Act, and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder;

2. permanently enjoining Defendants Silver and Davis each from future violations, and Defendants Gershon and Cifaldi each from aiding and abetting future violations, of Section 15(a) of the Exchange Act;

3. permanently enjoining Defendants Gershon and Cifaldi each from future violations of Section 13(b)(5) of the Exchange Act and Rules 13b2-1 and 13b2-2 thereunder, and from aiding and abetting future violations of Sections 13(a) and 13(b)(2)(A) and (B) of the Exchange Act and Rules 12b-20, 13a-1 and 13a-13;

4. pursuant to Section 20(e) of the Securities Act and Section 21(d)(2) of the Exchange Act, barring Defendants Gershon and Cifaldi each from serving as an officer or director of any public company;

5. ordering that Defendants Gershon, Cifaldi, Silver and Davis each disgorge any and all monies received from or through Intercallnet, plus prejudgment interest thereon;

6. ordering each Defendant to pay a civil penalty pursuant to Section 20(d) of the Securities Act and Section 21(d) of the Exchange Act; and

7. granting such other relief as this Court may deem just and appropriate.

Dated: October 13, 2005
San Francisco, CA 94104

Kathleen Ford
Assistant Chief Litigation Counsel
Attorney for the Plaintiff Securities
and Exchange Commission
44 Montgomery Street, 26th Floor
San Francisco, CA 94104
415-705-2500
415-705-2501 (facsimile)
fordka@sec.gov

Of Counsel:

Paul Berger
Mark Kreitman
James D. Fielder
Charles C. Davis, Jr.